The BALTIMORE AND OHIO
RAILROAD COMPANY,
Appellant,

v.

Dawn TAYLOR, Individually and as Administratrix of the Estate of Gregory Taylor, Deceased, Appellee.

No. 49A02–9110–CV–444.

Supreme Court of Indiana.

Sept. 23, 1992.

Victor L. Frost II, Frost & Hugon, Indianapolis, for appellant.

John F. Townsend, Jr., Townsend, Hovde & Montross, Indianapolis, for appellee.

ON CIVIL PETITION TO TRANSFER

PER CURIAM.

Petition to transfer denied.

GIVAN, Justice, dissenting to denial of transfer.

In a well-written opinion, reported at 589 N.E.2d 267, the Court of Appeals affirmed the trial court's judgment in favor of appellee. On September 14, 1992, this Court denied appellant's petition to transfer. I respectfully dissent from that decision. I would grant transfer in this case and reverse the trial court.

Although I agree with the Court of Appeals' observations that the fact there had been no shooting at trains in the immediate vicinity in Rush County where this shooting took place, the railroad was nevertheless on notice that in the year 1978 there had been 757 shooting incidents reported by railroads across the United States and Canada. By reason of these shootings and the throwing of missiles at passing trains, 49 C.F.R. § 223 required that windows on trains have a protective glazing applied sufficient to withstand the impact of a .22 caliber bullet. The windows in the train in question had such protective glazing; however, at the time Taylor was shot, the window was open although the train was travelling in a rural area.

Given this set of facts, it cannot be said that the railroad was not on notice that a shooting of this kind was a possibility. I also agree with the Court of Appeals' observation that it cannot be said that Taylor was outside the scope of his employment at the time of the shooting. Although he was delivering a personal message to a fellow employee, the testimony of the engineer on the train (Taylor was the brakeman) indicated that the engineer did not consider Taylor's action to be unusual or outside the scope of his employment.

However, as stated by the Court of Appeals, the issue in this case was whether the railroad failed to provide Taylor with a reasonably safe workplace. Although the window was coated as required by the regulations, it also, by necessity of the operation of the train at various times, had to be a window which could be opened. The bullet-resistant glazing on the window obviously was effective only when the window was closed and was there for the protection of the train crew for those times when it was not necessary to have the window open.

It is my view that this case is a classic example of "hard cases make bad law." One cannot help but have great sympathy for the decedent and his widow who have become victims of this unfortunate occurrence. In having this sympathy, it is easy for one to overlook the legal principles which should be applied to this case and pontificate that the widow should be paid for her tragic loss. However, as pointed out, the issue in this case was whether the railroad had furnished the decedent with a reasonably safe workplace. The evidence clearly demonstrates that the window in fact was protected by the required coating. It was, however, necessary in the overall operation of the train that the window be opened at times. It was obviously up to the train crew to maximize the closing of the window for their own safety. It is incredulous to take the position that the railroad had not informed the decedent that the window was so coated and that it

should be kept closed for the maximum time.

To take the position that this experienced brakeman, who, the engineer testified, was a good brakeman, did not know that at times trains were shot at or that persons threw missiles at trains is unacceptable. The only way the office personnel of the railroad could learn of missiles being thrown at trains or guns being fired in their direction would be to receive that information from the train crew. To say that 757 shooting incidents occurred in a single year and to take the position that an experienced train crewman would know nothing of this is a wholly unacceptable premise. To carry such a position to its logical conclusion, one would require the railroad to post a notice in the cab of the engine that it was running on steel rails at high speed and that such a condition might give rise to an accident.

Under this circumstance, which was well known to all concerned, the railroad in fact had taken reasonable precautions to provide a safe workplace in the cab of the engine. The fact that Taylor had the unlikely misfortune to be struck by a bullet at a time when the window was open does not gainsay the fact that the railroad had taken all steps to make a reasonably safe workplace for the train crew.

Although I find a lot of understandable rationalization in the trial court's findings and in the opinion of the Court of Appeals, I find not one scintilla of evidence to support the needed basic finding in this case that the railroad had failed to provide a reasonably safe workplace. Nowhere in this record is there any recitation of a fact which could reasonably be interpreted as negligence on the part of the railroad. My deepest sympathies are with the decedent and his widow. However, I must make my decision as a judge, not a philanthropist.

I would grant transfer in this case and reverse the trial court.